# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**BNJ LEASING, INC.,** *et al.*                                          **PLAINTIFFS**

**v.**                                              **CIVIL ACTION NO. 2:19-CV-156-KS-MTP**

**PORTABULL FUEL SERVICE, LLC**                                **DEFENDANT**

## CLAIM CONSTRUCTION
## MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court construes the term "deck access device" as the structure depicted as numerals 92a and 92b in Figures 4-5, and as described in the specification at 3:46-66 of the subject patent. The Court also construes the term "fuel dispenser" to refer to "a refueling boom that can be guided by a user standing on a rear docking station." The Court finds that the remaining disputed terms need no additional construction.

## I. BACKGROUND

This is a patent infringement case. Plaintiff BNJ Leasing, Inc. is the current owner of United States Patent No. 10,232,782 ("the Patent"), titled "Mobile Refueling Vessel." *See* Exhibit 1 to Complaint [1-2], at 1. Plaintiff MRB Enterprise, Inc. applied for the patent and assigned it to BNJ. *Id.* The abstract on the patent describes the device as "[a] mobile vessel for refueling engines at remote refueling sites." *Id.* Essentially, the device is a fuel tank on wheels, designed to be pulled by a truck, with a small platform on the end accessible by a fold-down ladder. *Id.* at 3-6. Fuel is

dispensed from either a pump on the side of the tank similar to what one would use to fill up a car at a gas station, or from a swiveling boom extending from the top of the tank, accessible from the platform on the back of the tank. *Id.* Both Plaintiffs own mobile refueling tanks, and MRB is in the business of leasing, deploying and servicing such mobile refueling tanks throughout the United States. Complaint [1], at 6.

Plaintiffs allege that Defendant, Portabull Fuel Service, LLC, also provides mobile refueling services. *Id.* at 7. Plaintiffs claim that one model of Defendant's refueling tanks, branded as the "Taurus," is covered by the Patent, and, therefore, Defendant has and continues to infringe on the Patent by making, selling and/or using the Taurus without Plaintiffs' permission. The Court held a *Markman*[1] hearing on November 30, 2020, and it is ready to construe the Patent's disputed terms.

## II. GENERAL LEGAL PRINCIPLES

"Determination of patent infringement requires a two-step analysis." *Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004). "First, the Court must construe the claims at issue," i.e. define the scope of the patent's disputed terms. *Worldwide Innovations & Techs., Inc. v. Microtek Medical, Inc.*, 2007 WL 2727231, at *2 (N.D. Miss. Sept. 17, 2007). Second, "the allegedly infringing device must be compared to the construed claims." *Novartis*, 363 F.3d at 1308. The first step is a question of law for the Court, while the second step is a question of fact for a jury. *Markman*, 517 U.S. at 384-85.

---

[1] *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

2

"[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude," and "the words of a claim are generally given their ordinary and customary meaning," which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 13.

In some cases, this industry-specific understanding may be "apparent even to lay judges, and claim construction in such cases involves little more than application of the widely accepted meaning of commonly understood words." *Id.* at 1314. In other cases, claim construction requires "examination of terms that have a particular meaning in a field of art," and "courts look to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* Such sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

"The claim construction inquiry . . . begins and ends with the actual words of the claim." *Capella Photonics, Inc. v. Fujitsu Network Comms., Inc.*, 2021 WL 465430, at *4 (E.D. Tex. Feb. 9, 2021) (quoting *Renishaw PLC v. Marpass Societa' per Azioni,*

3

158 F.3d 1243, 1248 (Fed. Cir. 1998)). The Court should consider the disputed "term's context in the asserted claim," or, phrased differently, its use relative to other terms in the claim. *Id.*

However, the claim's terms "do not stand alone. Rather, they are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims." *Phillips*, 415 F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)). Therefore, the entire "specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Capella Photonics*, 2021 WL 465430 at *4 (quoting *Phillips*, 415 F.3d at 1315). However, "it is improper to read limitations from a preferred embodiment described in the specification – even if it is the only embodiment – into the claims absent a clear indication in the intrinsic record that the patentee intended the claim to be so limited." *Id.* (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004)).

"[L]ike the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent." *Id.* But the Court should remain mindful that the prosecution history "represents an ongoing negotiation between the PTO and the applicant," and, therefore, "often lacks the clarity of the specification . . . ." *Id.* (quoting *Phillips*, 415 F.3d at 1317).

Extrinsic evidence "can also be useful," but "it is less significant than the

4

intrinsic record in determining the legally operative meaning of claim language." *Id.* (quoting *Phillips*, 415 F.3d at 1317). "Technical dictionaries and treatises" may help the Court understand the underlying technology and how one skilled in the art might use the disputed terms, but they may also be "too broad" or not indicative "of how the term is used in the patent." *Id.*

Finally, the Court is not required to construe a claim term if it is "a 'straightforward term' that require[s] no construction." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015). Claim construction is "not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). If a disputed term is "comprised of commonly used terms," each one "used in common parlance" without any "special meaning in the art," the Court need not construe it. *Summit 6*, 802 F.3d at 1291. In such situations, "the plain and ordinary meaning of the disputed claim language is clear." *Id.*

### III. CLAIM CONSTRUCTION

The Patent includes one claim, which provides as follows:

An assembly for refueling an engine or tank of a vehicle, the assembly comprising:

a mobile vessel configured to store fuel therein . . . ;

a port of the vessel through which fuel stored within the vessel can be withdrawn;

a fuel dispenser connected to the port for dispensing fuel stored within the vessel;

a refueling station at the front wall or the rear wall of the vessel, the

5

refueling station including:

> a generally horizontal deck arranged lower than the fuel dispenser and the port on which a worker can stand to access the fuel dispenser;
>
> a deck access device including a first portion and a second portion, the first portion extending from the horizontal deck in a direction perpendicular to the length of the vessel and downward toward a left or a right side of the vessel, the second portion foldable between a deployed position and a stowed position, in the deployed position the second portion extends downward towards a ground surface that the vessel is on to provide the worker access to the generally horizontal deck, and in the stowed position the second portion is folded relative to the deployed position; and
>
> a movable platform mounted to the generally horizontal deck, the platform is movable between a deployed position and a stowed position, in the deployed position the platform extends away from the deck to provide a color for the worker to stand on to connect the fuel dispenser to the engine or tank, and in the stowed position the movable platform is folded from the deployed position towards the generally horizontal deck.

Exhibit 1 to Complaint [1-2], at 13.

The parties disagree as to the construction of six terms from the patent: "port," "fuel dispenser," "a deck access device," "towards a left or right side of the vessel," "in the stowed position the second portion is folded relative to the deployed position," and "connect." Generally, Plaintiffs argue that each term needs no construction and should be construed according to its ordinary and customary meaning, while Defendant argues that each term should be construed more narrowly.

### A. *"port"*

First, the claim describes a "port of the vessel through which fuel stored within

6

the vessel can be withdrawn." *Id.* Plaintiffs argue that the term "port," as used here, needs no construction because it is a commonly understood word in the English language, and there is no indication in the intrinsic evidence that the patent uses the term in any way other than its common meaning. Defendant contends that the term "port" should be construed to mean an "opening to permit fuel to be added or withdrawn."

"Port" is a common word, and it appears to be employed here in its common usage, without any technical or specialized meaning. Fuel can generally flow into or out of an opening, and the patent clearly contemplates fuel flowing in either direction. The specifications refer to "various ports . . . on the top of the vessel to allow the tanks to be filled with fuel," *id.* at 12, and claim refers to a "port . . . through which fuel stored within the vessel can be withdrawn." *Id.* at 13. It is clear that the "port" referred to in the claim is on the top of the vessel because the claim specifies that the "fuel dispenser" is connected to it, and that a person reaches the "fuel dispenser" by standing on the platform on the rear of the vessel. *Id.* Finally, Plaintiffs' alternative proposed construction – "opening for the passage of fuel" – is substantively identical to Defendant's proposed construction – "opening to permit fuel to be added or withdrawn." For these reasons, the Court declines to construe the term "port."

**B.    *"fuel dispenser"***

Next, the claim describes a "fuel dispenser connected to the port for dispensing fuel stored within the vessel." *Id.* The "port" to which this sentence refers is on the

7

top of the vessel, because the claim says that a worker reaches it by standing on the deployed end platform. *Id.* However, the specifications describe two different types of "fuel dispensers." First, they contemplate "one or more side dispenser mechanisms such as the illustrated typical hose and nozzle configuration located on the side of the vessel." *Id.* at 12. These appear to be identical to what one would use to fill a car at a gas station. *See id.* at 3. The specifications also provide for "a boom that can be guided by a user standing on a rear docking station." *Id.* at 12. An "operator can grasp a refueling boom and swing it towards the vehicle fuel inlet opening to dispense fuel from the vessel into the tank of the vehicle." *Id.* This latter "fuel dispenser," comprised of a boom attached to the top of the vessel at a port, appears to be what the term "fuel dispenser" refers to in the claim.

Plaintiffs argue that the term "fuel dispenser" needs no construction because the claim itself provides substantial guidance as to its meaning, and the specifications and figures provide further clarification. Defendant contends that this need for further clarification demonstrates why the Court must construe the term. Defendant notes that fuel cannot flow upward in defiance of gravity, meaning that the "fuel dispenser" must include a pump.

The Court agrees that the term "fuel dispenser" is vague. Indeed, Plaintiffs' own specification includes two very different devices – the refueling boom and the more common hose and nozzle configuration – and refers to both as a "fuel dispenser." However, it is clear from the claim language that the "fuel dispenser" referred to in

8

the claim is the one on the top of the vessel, the refueling boom. Although the Court agrees with Defendant that fuel will not flow against gravity without some application of force, such as that provided by a pump, neither the specification nor the claim refer to a pump, and the Court declines to insert such language. Therefore, while "fuel dispenser" is vague, neither party has proposed a satisfactory alternative. Accordingly, the Court will construe the term "fuel dispenser" to refer to "a refueling boom that can be guided by a user standing on a rear docking station," as contemplated by the specification.

### C. *"a deck access device…"*

The claim describes:

> a deck access device including a first portion and a second portion, the first portion extending from the horizontal deck in a direction perpendicular to the length of the vessel and downward toward a left or a right side of the vessel, the second portion foldable between a deployed position and a stowed position, in the deployed position the second portion extends downward towards a ground surface that the vessel is on to provide the worker access to the generally horizontal deck, and in the stowed position the second portion is folded relative to the deployed position . . . .

*Id.* at 13. Defendant argues that this language invokes "means-plus-function" claiming, and that the Court should construe the claim to more accurately describe the structure described in the specification. In response, Plaintiffs argue that the means-plus-function analysis does not apply because the claim recites a sufficiently definite structure.

"Means-plus-fuction claiming occurs when '[a]n element in a claim for a

9

combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.'" *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1372 (Fed. Cir. 2020) (quoting 35 U.S.C. § 112(f)). The Court presumes "that claim terms with the word 'means' invoke § 112(f) and that claim terms without the word 'means' do not." *Id.* However, "the presumption against means-plus-function interpretation is rebuttable if a challenger demonstrates that a claim term either fails to 'recite sufficiently definite structure' or recites 'function without reciting sufficient structure for performing that function.'" *Id.* at 1373 (quoting *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015)). "[T]he presumption against means-plus-function claiming is not strong," and "a challenger need not show that the limitation is essentially devoid of anything that can be construed as a structure." *Id.* (punctuation omitted). If the challenger rebuts the presumption, the Court must "identify the claimed function and then determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Id.*

Here, the claim does not use the word "means," and the presumption against the means-plus-function analysis applies. *Id.* at 1372. However, the Court agrees with Defendants that the claim does not sufficiently describe the structure in question, particularly in light of the diagrams and specification.

First, the Court believes that the claim already provides a sufficient

10

description of the structure's claimed function – "to provide the worker access to the generally horizontal deck." Exhibit 1 to Complaint [1-2], at 13.

But the term "deck access device" – even with the language following it which describes the device in more detail – does not sufficiently describe the structure that corresponds to the claimed function. Indeed, "generic terms such as . . . device, and other verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they typically do not connote sufficiently definite structure and therefore may invoke § 112(f)." *Egenera*, 972 F.3d at 1373 (punctuation omitted). Therefore, the Court construes the structure described by the term "deck access device," as the structure depicted as numerals 92a and 92b in Figures 4-5, and as described in the specification at 3:46-66.

### D.     *"towards a left or a right side of the vehicle"*

The assembly on the back of the vessel consists of a fold-down ladder ("deck access device"), a stationary platform, and a movable platform that folds out from the stationary platform in a direction perpendicular to the length of the vessel, to provide access to a vehicle parked next to the refueling vessel. The movable platform bridges the gap, so to speak, between the refueling vessel and the vehicle that needs fuel. Defendant argues that the phrase "towards a left or a right side of the vessel" in the claim's description of the ladder insufficiently describes which side of the stationary platform the moving platform folds down from. Defendant contends that the claim must be construed to require that the ladder and movable platform fold down in

11

opposite directions, noting that this is what the specification and figures show. Defendant also argues that Plaintiff argued as much during the pendency of a parent patent.

As noted above, "it is improper to read limitations from a preferred embodiment described in the specification – even if it is the only embodiment – into the claims absent a clear indication in the intrinsic record that the patentee intended the claim to be so limited." *Capella Photonics*, 2021 WL 465430 at *4. The prosecution history is relevant, though, in that "a patentee cannot recapture specific constructions disclaimed during patent prosecution either through amendment or argument." *Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1348 (Fed. Cir. 2020). "In order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable." *Id.*

First, the patent itself does not demonstrate that Plaintiffs intended for the ladder and movable platform to always fold down in opposite directions. The language employed in the claim is unambiguous. Moreover, the specification provides that "[s]patially relevant terms . . . may be used . . . for ease of description to describe one element or feature's relationship to another element(s) or feature(s) as illustrated in the figures," but such "[s]patially relevant terms may be intended to encompass different orientations of the device in use or operation in addition to the orientation depicted in the figures." Exhibit 1 to Complaint [1-2], at 12-13. Moreover, the specification provides: "The drawings described herein are for illustrative purposes

12

only of selected embodiments and not all possible implementations, and are not intended to limit the scope of the present disclosure." *Id.* at 11.

As for the prosecution history, Defendant has not actually cited anything from the subject patent's prosecution history that clearly and unmistakably disclaims a particular construction. Rather, Defendant argues that Plaintiffs disclaimed a particular construction in the prosecution of a parent patent, citing an argument by Plaintiffs that the parent patent's "tiltable platform connected to an *opposite* edge of the deck." Exhibit D [65-4], at 108 (emphasis added).

"The prosecution history of a related patent can be relevant if, for example, it addresses a limitation in common with the patent in suit." *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1305 (Fed. Cir. 2001). However, "when the purported disclaimers made during prosecution are directed to specific claim terms that have been omitted or materially altered in subsequent applications (rather than the invention itself), those disclaimers do not apply." *Regents of Univ. of Minn. V. AGA Med. Corp.*, 717 F.3d 929, 943 (Fed. Cir. 2013). That is, "a prosecution disclaimer will only apply to a subsequent patent if that patent contains the same claim limitation as its predecessor." *Id.*

The parent patent claimed a "foldable docking station" which included a "tiltable platform pivotably connected to an *opposite* second edge of the deck." Exhibit C [65-3], at 14. In contrast, the patent at issue here contains no such limitation. Instead, it describes a "deck access device" that, when deployed, extends "towards a

13

left or a right side of the vehicle." Exhibit 1 to Complaint [1-2], at 13. Therefore, the Court concludes that the prosecution history of the parent patent is irrelevant to this issue.

For these reasons, the Court declines to construe the phrase "towards a left or right side of the vessel." The phrase shall be given its ordinary and customary meaning.

### E.   *"in the stowed position the second portion is folded relative to the deployed position"*

The claim describes the fold-down ladder, or "deck access device," as having two portions, "foldable between a deployed position and a stowed position." *Id.* "[I]n the deployed position the second portion extends downward towards a ground surface that the vessel is on," and "in the stowed position the second portion is folded relative to the deployed position." *Id.* Defendant argues that the claim should be construed to provide that "in the stowed position the second portion is folded upon and partially covers the first portion." Defendant contends that this construction would more accurately describe the deck access device as disclosed in the figures and specification, and that the patent does not disclose any other embodiments of deck access devices. Defendant argues that this folding ladder design is the only contemplated embodiment, and that any claim construction which broadens the claim's scope would be inappropriate.

As noted above, "it is improper to read limitations from a preferred

14

embodiment described in the specification – even if it is the only embodiment – into the claims absent a clear indication in the intrinsic record that the patentee intended the claim to be so limited." *Capella Photonics*, 2021 WL 465430 at *4. Defendant has not directed the Court to any evidence that Plaintiffs intended to limit the claim to the embodiment described in the specification and figures. Moreover, as the Court has already observed, the specification provides: "The drawings described herein are for illustrative purposes only of selected embodiments and not all possible implementations, and are not intended to limit the scope of the present disclosure." Exhibit 1 [1-2], at 11. Therefore, the Court finds that the term "relative to the deployed position" shall be construed in its ordinary and customary meaning, and no construction is necessary.

### F.     *"connect"*

Finally, the patent claims a "fuel dispenser connected to the port" on top of the vessel. *Id.* at 13. Defendants argue that the term "connect" should be construed as meaning "attached in a fixed relationship." Defendants note that the term "connect" is used at various points throughout the specification, arguing that it always describes a "fixed (mechanical) relationship between the two components that are connected." In response, Plaintiffs argue that no construction is required because the term "connect" is easily understand by its ordinary and customary usage, in which it can refer to multiple types of "connections."

In the Court's opinion, the term "connect" needs no construction. The claim and

15

specification employ it in its common usage, its plain and ordinary meaning is clear, and further construction would be an exercise in redundancy.

## IV. CONCLUSION

For these reasons, the Court construes the term "deck access device" as the structure depicted as numerals 92a and 92b in Figures 4-5, and as described in the specification at 3:46-66 of the subject patent. The Court also construes the term "fuel dispenser" to refer to "a refueling boom that can be guided by a user standing on a rear docking station." The Court finds that the remaining disputed terms need no additional construction.

SO ORDERED AND ADJUDGED this 23rd day of March, 2021.

/s/    Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE