## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

BNJ LEASING, INC., *et al.*                                                        PLAINTIFFS

v.                                                    CIVIL ACTION NO. 2:19-CV-156-KS-MTP

PORTABULL FUEL SERVICE, LLC                                                  DEFENDANT


### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **denies** Plaintiffs' Motion to Exclude Evidence and Testimony Regarding Alleged Non-Infringing Alternatives [186], **denies** Defendant's Motion for Summary Judgment and for *Daubert* Relief [189], **grants** Plaintiffs' Motion for Summary Judgment of No Inequitable Conduct [181], and **grants** Plaintiffs' Motion for Partial Summary Judgment that the Alleged 2013 H & H Offer Is Not Prior Art [183].

### I. BACKGROUND

This is a patent infringement case. Plaintiff BNJ Leasing, Inc. is the current owner of United States Patent No. 10,232,782 ("the Patent"), titled "Mobile Refueling Vessel." *See* Exhibit 1 to Complaint [1-2], at 1. Plaintiff MRB Enterprise, Inc. applied for the patent and assigned it to BNJ. *Id.* The abstract on the patent describes the device as "[a] mobile vessel for refueling engines at remote refueling sites." *Id.* Essentially, the device is a fuel tank on wheels, designed to be pulled by a truck, with a small platform on the end accessible by a fold-down ladder. *Id.* at 3-6. Fuel is

dispensed from either a pump on the side of the tank similar to what one would use to fill up a car at a gas station, or from a swiveling boom extending from the top of the tank, accessible from the platform on the back of the tank. *Id.* Both Plaintiffs own mobile refueling tanks, and MRB is in the business of leasing, deploying and servicing such mobile refueling tanks throughout the United States. Complaint [1], at 6.

Plaintiffs allege that Defendant, Portabull Fuel Service, LLC, also provides mobile refueling services. *Id.* at 7. Plaintiffs claim that one model of Defendant's refueling tanks, branded as the "Taurus," is covered by the Patent, and, therefore, Defendant has and continues to infringe on the Patent by making, selling and/or using the Taurus without Plaintiffs' permission.

The Court held a *Markman*[1] hearing on November 30, 2020, and on March 23, 2021, it issued a Claim Construction Memorandum Opinion and Order [135]. On October 15, 2021, the parties filed various dispositive motions, which the Court now addresses.

## II. MOTION TO EXCLUDE EVIDENCE OF NON-INFRINGING ALTERNATIVES [186]

Plaintiffs filed a Motion to Exclude [186] opinion testimony from Defendant's experts which refers to or relies on an alleged non-infringing alternative design created by one of Defendant's experts, Fred Smith. Plaintiffs contend that Defendant failed to timely disclose Smith's alternative design, and that the alternative design and any expert opinion based on it are unreliable.

---

[1] *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

## A.    *Disclosure*

Plaintiffs argue that Defendant first disclosed a specific non-infringing alternative design in a rebuttal report provided by Smith on August 2, 2021. Rule 26 requires parties to disclose the identity of any person who will provide expert testimony at trial. FED. R. CIV. P. 26(a)(2)(A). "[I]f the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the proponent of the expert testimony must provide a written report prepared and signed by the witness. FED. R. CIV. P. 26(a)(2)(B). Among other things, the report must include "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(i)-(ii).

"A party must make these disclosures at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D). Local Rule 26 provides that a "party must make full and complete disclosure as required by Fed. R. Civ. P. 26(a) and L.U.Civ.R. 26(a)(2)(D) no later than the time specified in the case management order." L.U.Civ.R. 26(a)(2). Moreover, any supplements to the disclosures must be made "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." FED. R. CIV. P. 26(e)(2). "Unless the court orders otherwise," pretrial disclosures must be made at least thirty days before trial. FED. R. CIV. P. 26(a)(3). But Local Rule 26 provides that a "party is under a duty to supplement disclosures at appropriate intervals under Fed. R. Civ. P. 26(e) and in no event later than the discovery deadline

established by the case management order." L.U.Civ.R. 26(a)(5).

Here, the Amended Case Management Order [138] provided that the fact discovery deadline was June 11, 2021. The deadline for expert designations and disclosure of opinions "on issues for which the party bears the burden of proof at trial" was July 9, 2021. The deadline for designation of "rebuttal trial experts" was August 2, 2021, and the deadline to depose experts was September 15, 2021. The Court later extended the deadline to depose experts to September 16, 2021. Defendant produced Smith's rebuttal expert report, which includes the disputed opinions regarding non-infringing alternative designs, on the rebuttal expert deadline of August 2, 2021.

The Court will assume, without deciding, that Defendant failed to timely disclose Smith's testimony regarding non-infringing alternative designs. Rule 37 provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In applying Rule 37(c), the Court considers the following factors:

    (1)    the importance of the witnesses' testimony;

    (2)    the prejudice to the opposing party of allowing the witnesses to testify;

    (3)    the possibility of curing such prejudice by a continuance; and

    (4)    the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 572 (5th Cir.

1996).

First, the disputed testimony is important, as Plaintiffs admit in briefing. Plaintiffs seek lost profit damages. Under one method of proving lost profits, Plaintiffs must prove, among other things, the "absence of acceptable non-infringing alternatives." *Mentor Graphics Corp. v. EVE-USA*, 851 F.3d 1275, 1285 (Fed. Cir. 2017). If a patentee makes a reasonable showing that it would have realized additional profits but for the infringement, then the burden shifts to the infringer to show that the patentee would not have realized some or all of the lost profits. *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1243 (Fed. Cir. 2017); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003). Plaintiffs contend that the importance of the evidence underscores the importance of timely disclosure, but this turns the analysis on its head. The importance of untimely disclosed expert testimony is properly weighed against exclusion. *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707-08 (5th Cir. 2007).

Second, Plaintiffs were not significantly prejudiced. The non-infringing alternative opinions were disclosed over six weeks before the deadline to depose experts. Therefore, Plaintiffs had an opportunity to depose Smith regarding the alternatives, and they had time to obtain opinions from their own experts on the topic. In fact, Plaintiffs did provide Smith's rebuttal report to their own experts. Exhibit H to Memorandum in Opposition [198-8], at 5; Exhibit I to Memorandum in Opposition [198-9], at 5.

Plaintiffs contend that they were prejudiced because they did not have an

5

opportunity to depose certain fact witnesses about Smith's opinions about non-infringing alternatives. However, even if Defendant had produced the disputed opinions on the first expert designation deadline, that would have still been after the deadline to conduct fact discovery.

Plaintiffs also contend that they were prejudiced because it is too late for them to obtain sur-rebuttal opinions from their own experts as to Smith's opinions on non-infringing alternatives. However, as noted above, Plaintiffs did, in fact, provide Smith's opinions to their own experts. To the extent Plaintiffs argue that they cannot offer these sur-rebuttal opinions because the disclosure deadlines have passed, the Court holds that they may do so.

For all these reasons, the Court declines to exclude Smith's opinion testimony regarding non-infringing alternatives under Rule 37.

## B.   *Rule 702*

Plaintiffs also argue that some of Defendant's experts' opinions are not admissible under Rule 702 and *Daubert*. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to

the facts of the case.

FED. R. EVID. 702. Therefore, "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court provided a nonexclusive list of "general observations intended to guide a district court's evaluation of scientific evidence," including: "whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Watkins*, 121 F.3d at 989 (punctuation omitted).

> Not every guidepost in *Daubert* will necessarily apply . . . , but the district court's preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue is no less important.

*Id.* at 990-91 (punctuation omitted).

Expert testimony must be supported by "more than subjective belief or unsupported speculation." *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). It "must be reliable at each and every step or it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the

conclusion, *et alia*." *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009). "Overall, the trial court must strive to ensure that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

But the Court's role as gatekeeper is not meant to supplant the adversary system because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The Court should focus solely on the proposed expert's "principles and methodology, not on the conclusions that they generate." *Id.* at 595. But "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

In summary, the proponent of expert testimony must demonstrate that the proposed expert is qualified, that the testimony is reliable, and that it is relevant to a question of fact before the jury. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). The proponent must prove these requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

1.   *Smith's Opinions*

First, Plaintiffs argue that Smith's opinions regarding his proposed acceptable non-infringing alternative are unreliable because they are not supported by enough

8

facts. Rule 702 specifically requires that an expert's testimony be based upon sufficient facts or data. FED. R. EVID. 702(b). Phrased differently, proposed expert testimony "must be supported by appropriate validation – i.e. good grounds, based on what is known." *Daubert*, 509 U.S. at 509 (punctuation omitted). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz*, 555 F.3d at 388; *see also Seaman*, 326 F. App'x at 725. Therefore, expert testimony must be supported by "more than subjective belief or unsupported speculation." *Paz*, 555 F.3d at 300. "Although the *Daubert* reliability analysis is flexible and the proponent of expert testimony need not satisfy every one of its factors, the existence of sufficient facts is . . . in all cases mandatory." *Moore v. Int'l Paint, LLC*, 547 F. App'x 513, 515 (5th Cir. 2013).

Accordingly, "a district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir. 2007). However, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). "[E]xpert opinions that overlook certain data are not typically excluded on that basis." *Gulf Restoration Network v. Oscar Renda Contracting, Inc.*, 2018 WL 6579171, at *2 (S.D. Miss. Dec. 13, 2018) (citing *Moss v. Ole South Real Estate, LLC*, 933 F.2d 1300, 1307 (5th Cir. 1991)). The Court should admit the testimony unless it is "wholly unreliable." *Rosier v.*

*Wood Towing, LLC*, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *14.38 Acres of Land*, 80 F.3d at 1077).

In his report, Smith provided examples of several alleged acceptable non-infringing alternatives. Exhibit L to Motion to Exclude [187-12], at 45-51. One of them was apparently his own design. *Id.* at 48-51. He explained why he believes the design would be an acceptable alternative. *Id.* at 49-51. Among other things, he noted that his design "has all the features for accessing the platform of the Accused Product," *id.* at 49, and that its upper deck would still be "approximately aligned with the top of a typical tanker truck . . . ." *Id.* at 50. Smith also consulted with "Mr. [Chris] Holifield of H & H Welding to obtain his thoughts on feasibility, acceptability, and cost of" this alternative design. *Id.* They agreed that the approximate cost to modify the design was low enough that it would not materially alter the device's affordability. *Id.* They likewise agreed that Defendant's customers would get the same benefit from the new design – namely, a portable fueling station for their trucks and equipment. *Id.* at 51.

Plaintiffs argue that neither Smith nor Holifield have any factual basis for the assertion that the proposed design would be acceptable to Defendant's customers. Plaintiffs note that Smith has not spoken to any of Defendant's customers, Exhibit M to Motion to Exclude [187-13], at 10, and that Holifield's company only fabricates fuel tanks for Defendant. Exhibit T to Motion to Exclude [187-20], at 7. Accordingly, Plaintiffs reason that neither Smith nor Holifield have

any basis for their opinion that Smith's alternative design would be acceptable to Defendant's customers.

The Court disagrees. First, Smith's assertion that the alternative design was acceptable was not mere *ipse dixit*. As noted above, Smith provided a reasonable explanation for the opinion. Exhibit L [187-12], at 49-51. Second, this is not a complex piece of technology. The product in question is just a portable fuel tank with a ladder and platform attached to it. The bottom line for Defendant's customers, as Smith noted, is that "[o]perationally, . . . [they] would still be able to refuel their bobtail fuel trucks without undermining any of the relevant functionality," *id.* at 51, and the relevant functionality is taking fuel to remote job sites to refuel "a bob truck from the back." Exhibit G to Motion for Summary Judgment [190-7], at 5-6. The Court recognizes that there may be design nuances that Plaintiffs will want their own experts to address at trial, but that is fodder for cross-examination – not grounds for excluding Smith's opinion altogether.

Smith is a mechanical engineer, with numerous relevant credentials. Exhibit K to Motion to Exclude [187-11], at 5-6. He has "designed many different products from industrial products such as aerial lifts, refuse trucks, dump trailers, grain cart and other mobile equipment to consumer products . . . ." *Id.* at 5. Holifield has fabricated industrial equipment for over three decades, including "oil field equipment" such as "[d]rilling rigs, derricks, storage tanks, frack tanks, [and] mud mixing tanks." Exhibit T to Motion to Exclude [187-20], at 3-5. Holifield's company made the accused product in this case. *Id.* at 7; Exhibit G to Motion for Summary

Judgment [190-7], at 5-6. The Court should admit expert testimony unless it is "wholly unreliable." *Rosier*, 2009 WL 982659 at *1 (citing *14.38 Acres of Land*, 80 F.3d at 1077). In light of both men's design and fabrication experience – particularly Holifield's specific experience designing fuel tanks and other equipment specifically for oil field services, including the accused product – the Court finds that Smith's opinion testimony is not "wholly unreliable," and, therefore, it has a sufficient factual basis to satisfy Rule 702.

Plaintiffs also argue that Smith's opinions regarding his proposed acceptable non-infringing alternative are irrelevant to the lost profits analysis because the proposed design was not actually available on the market. "[T]o be an acceptable non-infringing substitute, the product or process must have been available *or* on the market at the time of infringement." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). The goal of this inquiry is to "reconstruct[] the market, as it would have developed absent the infringing product, to determine what the patentee would have made." *Id.* at 1350 (punctuation omitted). "[A] fair and accurate representation of the 'but for' market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed." *Id.* at 1350-51.

In this context, "available" does not necessarily mean that the product was for sale on the market. While "'market sales' provide significant evidence of availability as a substitute," "an available technology not on the market during the infringement can constitute a non-infringing alternative." *Id.* at 1351. But "[w]hen an alleged

12

alternative is not on the market during the accounting period, a trial court *may* reasonably infer that it was not available as a non-infringing substitute at that time." *Id.* at 1353 (emphasis added). Plaintiffs have not directed the Court to any authority providing that the Court *must* make such an inference.

This case does not involve a complex or innovative piece of technology. It's a fuel tank on wheels with a ladder and platform attached to it. Holifield testified that he has fabricated oil services equipment, including fuel tanks, for decades. Exhibit T to Motion to Exclude [187-20], at 3-5. Holifield also testified that "prior to Portabull coming and saying, 'Hey, we want to put a load arm on the back of the trailer,'" he had seen that design before in use in the industry. Exhibit G to Motion for Summary Judgment [190-7], at 6-7. In fact, he testified that his company had manufactured similar products – portable fuel tanks, with a boom arm and a platform – but just without the movable ladder and platform. *Id.* at 7. In fact, the record contains a diagram of a portable fuel tank with a ladder and folding platform on the back, designed by H & H Welding for Defendant in June 2013. *Id.* at 4-8; Exhibit J to Motion for Summary Judgment [190-10].

For all these reasons, the Court declines to infer that that non-infringing alternative in question was not available during the relevant time period simply because it was not for sale on the open market. There is at least enough evidence in the record to create a genuine dispute material fact as to whether the same design was available for years prior to the relevant accounting period.[2]

---

[2] The Court also notes that neither Plaintiffs' briefing nor their Complaint specify the relevant

2.    *Krause's Opinions*

Plaintiffs also argue that the Court should exclude certain opinions from Defendant's damages expert, Eric Krause. First, Plaintiffs argue that Defendant failed to timely disclose Krause's opinions. The Court rejects that argument for the same reasons it provided above as to Smith's opinions. Second, Plaintiffs argue that Krause's opinions are unreliable because he relied upon Smith's unreliable opinions. The Court rejects this argument because it has not excluded Smith's opinions as unreliable.

For all the reasons provided above, the Court **denies** Plaintiffs' Motion to Exclude Evidence and Testimony Regarding Alleged Non-Infringing Alternatives [186].

### III. MOTION TO EXCLUDE EXPERT TESTIMONY [189]

Defendant filed a Motion [189] seeking multiple forms of relief, including the exclusion of certain opinions from Plaintiffs' experts.

### A.    *Wacek's Opinions*

First, Defendant argues that the Court should exclude opinions regarding lost profits provided by Plaintiffs' expert Dr. Joel Wacek. As noted above, under one method of proving lost profits, Plaintiffs must prove, among other things, the "absence of acceptable non-infringing alternatives." *Mentor Graphics Corp.*, 851 F.3d at 1285. Wacek utilized that approach when forming his opinions. Exhibit H to Motion for Summary Judgment [190-8], at 12-13. Defendant argues that Wacek relied

---

accounting period.

solely on the opinion of another expert, Dr. Richard Klopp, to establish that there were no acceptable non-infringing alternatives, but that Klopp offered no opinion on the subject. Therefore, Defendant argues that Wacek's opinions on lost profits are not supported by sufficient facts or data and must be excluded.

As noted above, Rule 702 specifically requires that an expert's testimony be based upon sufficient facts or data. FED. R. EVID. 702(b). However, "a district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Knight*, 482 F.3d at 354. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1077. When a litigant challenges the factual foundation of an expert's opinion, the Court should generally admit the disputed opinions unless they are "wholly unreliable." *Rosier*, 2009 WL 982659 at *1 (citing *14.38 Acres of Land*, 80 F.3d at 1077).

In Wacek's report, he was "not aware of any information provided by Portabull regarding any available, acceptable alternatives that it could have provided instead of the patented technologies that would provide similar benefits, and be acceptable to customers." Exhibit K to Motion for Summary Judgment [190-11], at 15. He also referred to the opinion of Dr. Richard Klopp "regarding the lack of commercially available, acceptable alternatives that provide the same benefits of the patented technologies to both users and Portabull." *Id.* at 16. Wacek then discussed how Defendant allegedly emphasized the infringing aspects of the disputed product in its

marketing, and he noted specific customers who allegedly purchased the product because they wanted the infringing design features. *Id.* at 16-26. He concluded: "Absent use of the patented technology, PortaBull would not have captured sales to those customers. Rather, those customers would have purchased from the only market participant that was capable of providing a product that satisfied all of their purchasing criteria: [Plaintiffs]." *Id.* at 26. In forming these opinions, Wacek also relied upon conversations with Karl Schwartz, a representative of Plaintiffs, about the industry and which features are relevant to customers. *Id.* at 9-10.

The second element of the *Panduit* analysis – "the absence of non-infringing alternatives – considers demand for particular limitations or features of the claimed invention." *Mentor Graphics Corp.*, 851 F.3d at 1285. "[I]f there is a non-infringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale." *Id.* at 1286. In the Court's opinion, Wacek's analysis on this point is not "wholly unreliable," particularly in light of the inherent difficulty in proving a negative. *Rosier*, 2009 WL 982659 at *1 (citing *14.38 Acres of Land*, 80 F.3d at 1077). There is some factual basis for his opinion on this topic, and whatever shortcomings it may suffer are fodder for cross-examination, rather than grounds for exclusion.

## B.     *"Doctrine of Equivalents"*

Plaintiffs' expert, Dr. Richard Klopp, provided his opinions as to how the disputed product infringes Plaintiffs' patent. Exhibit E to Motion for Summary Judgment [190-5], at 25-42. Among other things, he opined that the product "includes

the limitations of Claim 1(d.ii) under the doctrine of equivalents." *Id.* at 39, 41; *see also* Exhibit D to Motion for Summary Judgment [190-4], at 7. Defendant argues that Plaintiffs did not timely disclose this theory of infringement, and, as a result, it has been prevented from raising an applicable defense or conducting discovery with regard to the doctrine of equivalents.

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997). This doctrine broadens the protections for the patentee, "protect[ing] the patentee from devices that differ merely in 'name, form or shape' from the patented invention but 'perform substantially the same function in substantially the same way to obtain the same result.'" *LaSalle v. Carlton's Laydown Serv., Inc.*, 680 F.2d 432, 434 (5th Cir. 1982) (quoting *Ziegler v. Phillips Petroleum Co.*, 483 F.2d 858, 867 (5th Cir. 1973)).

The Case Management Order provided that Plaintiffs were required to serve Preliminary Infringement Contentions which "specify whether the alleged infringement is literal or falls under the doctrine of equivalents" no later than May 6, 2020. Addendum A to Case Management Order [18-1], at 1-2. The order also provided that Plaintiffs could amend their infringement disclosures within 30 days after the Court's claim construction ruling. *Id.* at 4. The Court entered a Claim

Construction Memorandum Opinion and Order [135] on March 23, 2021. Therefore, any amendments to the Preliminary Infringement Contentions were due on or before April 22, 2021. Plaintiffs' Amended Infringement Contentions, served on April 15, 2021, specifically provide that the basis for infringement for each disputed element of the accused device is "Literal." Exhibit M to Motion for Summary Judgment [190-13], at 3-5. However, in a footnote, Plaintiffs stated: "[W]ith respect to the 'deck access device' limitation . . . , Plaintiffs assert that the Accused Devices perform the same function as claimed, with structure that is equivalent to the corresponding structure identified in the Court's claim construction order. Thus, Plaintiffs assert this limitation is literally infringed." *Id.* at 4 n.2.

In Klopp's report, dated July 9, 2021, he opined, "To the extent that it is found that the Accused Products do not literally infringe, it is my opinion that the Accused Products infringe under the doctrine of equivalents." Exhibit E to Motion for Summary Judgment [190-5], at 58.

The Court will assume that Plaintiffs failed to timely disclose that they were asserting an infringement theory of equivalents. If a party does not timely disclose a particular theory of infringement, the Court has the discretion to exclude that theory under Rule 37. *O2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369 (Fed. Cir. 2006). "Deciding whether later filed infringement contentions should be excluded is somewhat similar to deciding whether evidence should be excluded for discovery violations," and the Court should apply the Rule 37 analysis. *Ariba, Inc. v. Emptoris, Inc.*, 2008 WL 11348416, at *1 (E.D. Tex. Oct. 17, 2008). The Court

considers the following factors:

(1)     the importance of the witnesses' testimony;

(2)     the prejudice to the opposing party of allowing the witnesses to testify;

(3)     the possibility of curing such prejudice by a continuance; and

(4)     the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club*, 73 F.3d at 572.

First, Klopp's testimony on this point is important because it is a theory of infringement that broadens Plaintiffs' protection. Second, the Court does not believe that Defendant would be substantially prejudiced by allowing the testimony because 1) Defendant had an opportunity to depose Klopp on the issue; 2) Defendant had an opportunity to obtain a rebuttal opinion from its own experts; and 3) Defendant did, in fact, obtain an expert opinion on an ensnarement defense[3] against an equivalent infringement theory. Third, to whatever extent Defendant is prejudiced, the Court can not address whether a cure is available because Defendant has not proposed any specific cure. Rather, it vaguely asserted that it would require "substantial" effort. Regardless, the Court can and does hold that Defendant is not foreclosed from asserting an ensnarement defense at trial. Finally, Plaintiffs have not provided any satisfactory explanation for why they did not specifically assert an equivalence theory of infringement.

---

[3] "A doctrine of equivalents theory cannot be asserted if it will encompass or 'ensnare' the prior art." *G. David Jang, M.D. v. Boston Scientific Corp.*, 872 F.3d 1275, 1285 (Fed. Cir. 2017).

Considering all these factors, the Court finds that Defendant's motion to exclude Klopp's opinions regarding the doctrine of equivalents should be denied. There is no substantial prejudice because Defendant had an opportunity to depose Klopp and to obtain an opinion from their own expert on an affirmative defense of ensnarement.

## C.    *Klopp's Opinions on Validity*

Finally, Defendant argues that paragraphs 91-96, 113-118, 143-147, and 191-196 of Klopp's rebuttal report should be excluded because the opinions expressed there rely on an improper understanding of the law.

Among other things, Defendant's expert, Smith, asserted that the '782 patent was invalid because it merely combined various elements known in the prior art to yield a predictable result. Exhibit K to Motion to Exclude [187-11], at 41-42. In support of this opinion, he provided examples of combinations of elements known in the prior art that provide the same desired benefits as the claim elements of the '782 patent. *Id.* at 43-106. In paragraphs 91-96, 113-118, 143-147, and 191-196 of his rebuttal report, Klopp asserted that Smith failed to explain whether a person having ordinary skill in the art would desire to build such combinations, and he stated that Smith failed to explain how certain technical, mechanical, and/or practical obstacles to designing such combinations would be overcome. Exhibit L to Motion for Summary Judgment [190-12], at 39-42, 47-51, 58-59, 74-75.

"A patent for a claimed invention may not be obtained . . . if the differences between the claimed invention and the prior art are such that the claimed invention

20

as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.

> A determination of obviousness requires finding that a person of ordinary skill in the art would have been motivated to combine or modify the teachings in the prior art and would have had a reasonable expectation of success in doing so. This requires identifying a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This motivation to combine may be found explicitly or implicitly in market forces; design incentives; the interrelated teachings of multiple patents; any need or problem known in the field of endeavor at the time of invention and addressed by the patent; and the background knowledge, creativity, and common sense of the person of ordinary skill.

*Adapt Pharm Ops. Ltd. v. Teva Pharms. USA, Inc.*, --- F.4th ---, 2022 WL 402133, at *5 (Fed. Cir. Feb. 10, 2022) (citations and punctuation omitted).

Defendant argues that Klopp's opinions erroneously suggest that "Smith needed to provide some sort of blueprint or other actual design work to underscore his opinions." The Court disagrees. The disputed testimony is relevant to the obviousness analysis. Klopp merely criticized Smith's opinions for purportedly providing insufficient explanation on various points related to the desirability and feasibility of the combinations, as he is free to do. Likewise, if Defendant believes that Klopp over-emphasizes certain alleged deficiencies in Smith's opinions, then it is free to cross-examine Klopp and present its own expert testimony on the issue. The obviousness analysis is "expansive and flexible." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007). Therefore, the Court believes that Defendant's objections here go to the weight of the testimony, rather than its

admissibility.

For all these reasons, the Court denies Defendant's Motion for *Daubert* Relief [189].

## IV. MOTION FOR SUMMARY JUDGMENT [189]

Defendant filed a Motion [189] seeking multiple forms of relief, including summary judgment in its favor on certain issues.

### A.   *Standard of Review*

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference

to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

When, like here, parties file cross-motions for summary judgment, the Court is not required to finally resolve the case by granting summary judgment in favor of one side or the other. *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). Rather, each motion is addressed on its own merits under the applicable standard. *Id.*

### B.    *Claimed Deck Device*

First, Defendant argues that the Court should grant summary judgment as to Plaintiffs' claim that the accused products contain the "deck access device" described in the patent. The claim describes:

> a deck access device including a first portion and a second portion, the first portion extending from the horizontal deck in a direction perpendicular to the length of the vessel and downward toward a left or a right side of the vessel, the second portion foldable between a deployed position and a stowed position, in the deployed position the second portion extends downward towards a ground surface that the vessel is on to provide the worker access to the generally horizontal deck, and in the stowed position the second portion is folded relative to the deployed position . . . .

Exhibit 1 to Complaint [1-2], at 13.

The Court previously ruled that this was a "means-plus-function" claim limitation, which invokes 35 U.S.C. § 112(f). *BNJ Leasing, Inc. v. Portabull Fuel Serv., LLC*, 2021 WL 1110299, at *4-*5 (S.D. Miss. Mar. 23, 2021). "Means-plus-

23

function claiming occurs when '[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of a structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.'" *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1372 (Fed. Cir. 2020) (quoting 35 U.S.C. § 112(f)).

The Court found that the patent provides a sufficient description of the structure's claimed function: "to provide the worker access to the generally horizontal deck." *BNJ Leasing, Inc.*, 2021 WL 1110299 at *5. The Court construed the term "deck access device" to mean "the structure depicted as numerals 92a and 92b in Figures 4-5, and as described in the specification at 3:46-66." *Id.*; *see also* Exhibit 1 to Complaint [1-2], at 5-6, 12. In laymen's terms, the "deck access device" is a folding ladder attached to the platform on the back of the fuel tank. The accused products also have a folding ladder attached to a platform on the back of the fuel tank, but their ladders fold out parallel with the length of the fuel tank, rather than perpendicular to it. *See* Exhibit E to Motion for Summary Judgment [190-5], at 22, 36, 39.

"When comparing the patent claims to the accused device or process, the plaintiff bears the burden of proving by a preponderance of the evidence that *every limitation* set forth in a patent claim is present in the accused device or process either literally or by a substantial equivalent." *3rd Eye Surveillance, LLC v. United States*, 151 Fed. Cl. 49, 54 (Fed. Cl. 2020).

"Literal infringement of a means-plus-function claim limitation requires that

the relevant structure in the accused device perform the identical function recited in the claim and that the structure be identical or equivalent to the corresponding structure in the specification." *Tritek Techs., Inc. v. United States*, 67 Fed. Cl. 735, 742 (Fed. Cl. 2005) (citing *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)). "The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function." *Odetics*, 185 F.3d at 1268.

Under the common-law doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co.*, 520 U.S. at 21. In other words, the common-law doctrine of equivalents "protect[s] the patentee from devices that differ merely in name, form or shape from the patented invention but perform substantially the same function in substantially the same way to obtain the same result." *LaSalle*, 680 F.2d at 434 (punctuation omitted).

These two analyses – statutory equivalents under § 112(f) and the common-law doctrine of equivalents – are similar, but the common-law doctrine of equivalents "requires that the function, way, and result are substantially similar," while § 112(f) requires the accused device to "perform the identical function . . . in substantially the same way to achieve substantially the same result." *SPEX Techs., Inc. v. W. Digital*

25

*Corp.*, 859 F. App'x 557, 561 (Fed. Cir. 2021). The common-law doctrine of equivalents, therefore, provides broader protection for patentees. *See, e.g. Al-Site Corp. v. VIS Int'l, Inc.*, 174 F.3d 1308, 1319-20 (Fed. Cir. 1999) (explaining difference between equivalence under § 112(f) and the doctrine of equivalents).

Plaintiffs' expert, Dr. Richard Klopp, stated in his report that the difference in the direction that the ladder folds down is "irrelevant to the function performed by the structure, the way it is performed, and the result." Exhibit E to Motion for Summary Judgment [190-5], at 36. He continued:

> The Accused Product structure delivers the identical function (providing a worker access to a generally horizontal deck) in the same way (via a fixed portion extending from the horizontal deck and downwards towards a left or a right side of the vessel, and a second portion foldable between a deployed position and a stowed position) and achieves the same result (providing both a configuration for use and a configuration for transport).

*Id.* He conducted a comparison of the components and function of the accused products to the claim limitation, *id.* at 37-38, and concluded that the accused products "literally include all features of Claim 1.d.ii" under the literally infringement analysis applicable to means-plus-function claim limitations. *Id.* at 38. He also concluded that "the structure in the Accused Products performs a function substantially the same as the Claim 1.d.ii deck access function . . . in substantially the same way with substantially the same result . . . ." *Id.* at 39.

This testimony creates a genuine dispute of material fact as to whether the accused products infringe the patent's "deck access device" limitation, and the Court denies Defendant's motion as to this issue.

26

**C.    *The Non-Compete Clause***

Next, Defendant argues that Plaintiffs' patent is unenforceable, citing the doctrine of unclean hands. Mark W. Beard – the inventor of the subject patent – operated a fuel supply business. He sold the company to Maxum Petroleum in 2010, and as part of the sale, he agreed that for seven years after the sale, he would not "directly or indirectly own any interest in, manage, control, participate in (whether as an officer, director, employee, partner, representative, or otherwise), consult with, render services for, or in any other manner engage in any Restricted Business (other than for or on behalf of the Buyer) . . . ." Exhibit C to Motion for Summary Judgment [190-3], at 23-24. The contract defined "Restricted Business" as "any business (i) engaged in the distribution or sale of fuel or lubricants to any pipeline construction contractor or any other commercial, industrial, or agricultural business or enterprise or (ii) that utilizes Mobile Fueling Systems . . . or any other tanks or equipment similar to Mobile Fueling Systems." *Id.* at 20-21. This non-competition provision extended through December 22, 2017.

Mark W. Beard also became an employee of one of Maxum's subsidiaries. *Id.* at 25-34. The Employment Agreement had a term of roughly two years, *id.* at 25, and it included a non-competition clause that was effective two years after termination of the employment relationship. *Id.* at 29. This non-competition provision extended through December 31, 2014.

The doctrine of unclean hands applies "when 'misconduct' of a party seeking relief 'has immediate and necessary relation to the equity that he seeks in respect of

the matter in litigation,' *i.e.*, 'for such violations of conscience as in some measure affect the equitable relations between parties in respect of something brought before the court.'" *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245, 54 S. Ct. 146, 78 L. Ed. 293 (1933)). Phrased differently, the doctrine applies "where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Keystone*, 290 U.S. at 245. The party asserting the defense of unclean hands must prove it by clear and convincing evidence. *In re Omeprazole Patent Litigation*, 483 F.3d 1364, 1374 (Fed. Cir. 2007).

Defendant cited three cases in support of its argument that the Court should decline to enforce the subject patent because Plaintiffs have unclean hands. First, in *Gilead*, an employee of the patentee used confidential information obtained from the alleged infringing party under a non-disclosure agreement to amend the subject patent and aid in its prosecution against the infringing party. *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 2016 WL 3143943, at *27-29 (N.D. Cal. June 6, 2016). The *Gilead* patentee also engaged in serious litigation misconduct, providing false testimony in an attempt to deceive the opposing party and the court. *Id.* at 29-32. The Federal Circuit described these actions as "two related forms of pre-litigation business misconduct" directed at the party against whom the patentee sought to enforce the patent, *Gilead*, 888 F.3d at 1240-41, as well as "litigation misconduct" by the patentee in the infringement suit. *Id.* at 1244. The court held that "taken together, [they]

justify the equitable determination of unclean hands as a defense to enforcement" of the patent. *Id.* at 1240.

Second, in *Keystone*, the patentee knew of a prior use of the patented device when he filed his patent application. *Keystone*, 290 U.S. at 243. After the patent issued, the patentee paid the individual who invented the prior device to, among other things, execute an agreement to assign his right as inventor, keep the prior use secret, and suppress any evidence thereof. *Id.* Having hidden these facts, the patentee secured a favorable ruling in one infringement case, and then he filed two more, now armed with a judgment in his favor. *Id.* at 242-43. In the latter cases, the patentee failed to disclose evidence of the prior use, but the infringing parties deposed the actual inventor and discovered details of the "corrupt transaction." *Id.* at 243-44. The Supreme Court held that the transaction with the actual inventor and subsequent use of the patent to secure a favorable ruling in the initial infringement suit were connected to the latter cases because the lower court relied on the prior ruling when granting preliminary injunctions. *Id.* at 246-47. Accordingly, the doctrine of unclean hands was properly applied. *Id.* at 247.

Finally, in *Precision Instrument Mfg.*, the Supreme Court noted that the "history of the patents . . . in issue is steeped in perjury and undisclosed knowledge of perjury." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 816, 65 S. Ct. 993, 89 L. Ed. 1381 (1945). The patent "application was . . . based upon false data which destroyed whatever just claim it might otherwise have had to the status of a patent." *Id.* Knowing this, the patentee "chose to act in disregard of the

public interest," by acquiring the patent nonetheless and enforcing it. *Id.* "Those who have applications pending with the Patent Office or who are parties to Patent Office proceedings have an uncompromising duty to report to it all facts concerning possible fraud or inequitableness underlying the applications in issue." *Id.* at 818. Accordingly, the patentee's enforcement action was due to be dismissed "by resort to the unclean hands doctrine." *Id.* at 819.

The Court is unconvinced that the unclean hands doctrine should apply here. First, the conduct alleged here is significantly less severe than that involved in the three cases discussed above. Defendant has not alleged any fraud or perjury. Likewise, Defendant has not alleged any corrupt behavior in this litigation or in the acquisition of the subject patent. The three cases cited above all involved fraudulent or corrupt behavior.

Second, the connection between Plaintiffs' alleged misconduct and this case is significantly more tenuous than that involved in the cases discussed above. Here, Plaintiffs allegedly breached a non-compete agreement with a third party. Defendant was not a party to that agreement, and, to the extent there is a causal connection between the alleged breach and this litigation, it runs through several layers of intervening circumstances across time and distance. In other words, the Court is unconvinced that Plaintiffs' alleged breach of the non-compete agreement is a proximate cause of this infringement action, and Defendant's alleged misconduct must have an "immediate and necessary relation" to this case. *Gilead*, 888 F.3d at 1239. At the very least, Defendant has not proved such a relation by clear and

convincing evidence. For these reasons, the Court denies Defendant's motion as to this issue.

### D.   *Prior Art*

Finally, Defendant argues that Chris Holifield of H & H Welding sold a tank design to it in June 2013, approximately eighteen months before Plaintiffs acquired the subject patent, that constitutes prior art. "A person shall be entitled to a patent unless . . . the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention . . . ." 35 U.S.C. § 102(a)(1). "Prior art under the on-sale bar can support a determination that a patent claim is invalid as anticipated or obvious." *Cap Export, LLC v. Zinus, Inc.*, 996 F.3d 1332, 1337 (Fed. Cir. 2021).

"A prior art reference anticipates a patent's claim when the four corners of that document describe every element of the claimed invention, either expressly or inherently, such that a person having ordinary skill in the art could practice the invention without undue experimentation." *In re Gamble*, 2022 WL 151986, at *2 (Fed. Cir. Jan. 18, 2022) (punctuation omitted). "A patent claim is anticipated only if each limitation is found within a single prior art reference, arranged or combined in the same way as in the claim." *Id.* However, "a patent is presumed to be valid, 35 U.S.C. § 282 (2000), and that presumption can be overcome only by clear and convincing evidence of facts to the contrary . . . ." *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1308 (Fed. Cir. 2004).

Defendant contends that the "on sale" and "otherwise available to the public"

prongs of § 102(a)(1) apply here.

    *1.    "On Sale"*

    For the "on sale" prong of § 102(a)(1) to apply, two conditions must be met "more than a year before an inventor files a patent application." *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, --- U.S. ---, 139 S. Ct. 628, 633, 202 L. Ed. 2d 551 (2019). "First, the product must be the subject of a commercial offer for sale." *Id.* "This inquiry requires there have been a commercial offer, and the invention that was the subject matter of the offer for sale must satisfy each claim limitation of the patent, though it may do so inherently." *Quest Integrity USA, LLC v. Cokebusters USA Inc.*, 924 F.3d 1220, 1227 (Fed. Cir. 2019). "Inherency is established if the natural result flowing from the operation as taught would result in the performance of the questioned function." *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1329 (Fed. Cir. 2001). "[A] sale or offer of sale need not make an invention available to the public . . . ." *Quest Integrity*, 924 F.3d at 1227.

    Second, the invention must be ready for patenting, which . . . [can] be shown by proof of reduction to practice or drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Helsinn*, 139 S. Ct. at 633.

    The claim includes the following limitation: "a fuel dispenser connected to the port for dispensing fuel stored within the vessel." Exhibit 1 to Complaint [1-2], at 13. The Court construed the term "fuel dispenser" to mean "a refueling boom that can be guided by a user standing on a rear docking station . . . ." *Portabull*, 2021 WL 1110299

at *4. The record contains evidence indicating that H & H's June 2013 tank design did not include a fuel dispenser at the rear of the vessel. *See* Exhibit L to Motion for Summary Judgment [190-12], at 32; Exhibit M to Motion for Summary Judgment [184-13], at 12-14; Exhibit J to Motion for Summary Judgment [190-10], at 2-3.

Therefore, the record contains evidence from which a jury could reasonably find that H & H's June 2013 tank design does not satisfy each claim limitation of the subject patent. *See Quest Integrity*, 924 F.3d at 1227. Accordingly, the Court declines to grant summary judgment in Defendant's favor as to the applicability of the "on sale" bar.

2. *"Otherwise Available to the Public"*

The "otherwise available to the public" prong is interpreted "broadly." *In re Enhanced Sec. Research, LLC*, 739 F.3d 1347, 1354 (Fed. Cir. 2014). It broadens the scope of § 102(a)(1) to anything "the public has a means of accessing . . . ." *Id.* The key determination is "whether interested members of the relevant public could obtain the information if they wanted to." *Id.*

Chris Holifield of H & H Welding testified that H & H did not publicize the 2013 design and, in fact, considered it to be confidential. Exhibit M to Motion for Summary Judgment [184-13], at 43, 48. He also testified that the design was never presented to any other customer, *id.* at 47, or made available to the public. *Id.* at 50. Likewise, Nathan McAndrews, a former employee of H & H, testified that he had no knowledge of the 2013 design ever being made available to the public. Exhibit Q to Motion for Summary Judgment [184-17], at 28.

33

This testimony creates a genuine dispute of material fact as to whether the 2013 design was "otherwise available to the public." Therefore, the Court also declines to grant summary judgment in Defendant's favor as to the applicability of this prong of § 102(a)(1).

For all the reasons provided above, the Court denies Defendant's Motion for Summary Judgment [189].

### V. MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT [181]

Plaintiffs filed a Motion for Summary Judgment [181] as to Defendant's affirmative defense of inequitable conduct. As Defendant has the burden of proof on this issue, Plaintiffs must "merely demonstrate an absence of evidentiary support in the record" for the defense, while Defendant "must come forward with specific facts showing that there is a genuine issue for trial." *Cuadra*, 626 F.3d at 812.

Defendant claims that Mark Beard, Plaintiffs' deceased principal, failed to disclose material information to the USPTO when he applied for the subject patent. "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *U.S. Water Servs., Inc. v. Novozymes A/S*, 843 F.3d 1345, 1352 (Fed. Cir. 2016). "A finding of inequitable conduct as to any single claim renders the entire patent unenforceable . . . ." *Id.* "Inequitable conduct occurs when a patentee breaches his or her duty to the U.S. Patent and Trademark Office ('USPTO') of candor, good faith, and honesty." *Id.*

"To prevail on a claim of inequitable conduct in a patent case, the accused infringer must prove by clear and convincing evidence that the patentee: (1) knew of

34

the reference or prior commercial sale; (2) knew that it was material; and (3) made a deliberate decision to withhold it." *GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1324 (Fed. Cir. 2020). Additionally, "the [patentee's] specific intent to deceive [the USPTO] must be the single most reasonable inference able to be drawn from the evidence." *Id.* To prove materiality, the accused infringer "ordinarily must show that the patentee withheld or misrepresented information that, in the absence of the withholding or misrepresentation, would have prevented a patent claim from issuing." *U.S. Water Servs.*, 843 F.3d at 1353.

Defendant claims that Plaintiffs' previous principal, Mark W. Beard, purchased a fuel tank from Wichita Tank Manufacturing in the fall of 2013. Defendant contends that this tank constitutes prior art, and that Beard intentionally failed to disclose its existence to the USPTO. Defendant argues that the "public use" prong of § 102(a)(1) applies.

"A person shall be entitled to a patent unless . . . the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention . . . ." 35 U.S.C. § 102(a)(1). However:

> A disclosure made 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention under subsection (a)(1) if –
>
>> (A) the disclosure was made by the inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor; or
>>
>> (B) the subject matter disclosed had, before such disclosure, been

> publicly disclosed by the inventor or a joint inventor or another
> who obtained the subject matter disclosed directly or indirectly
> from the inventor or a joint inventor.

35 U.S.C. § 102(b)(1).

"A bar under [the public use prong of § 102(a)(1)] arises where, before the critical date, the invention is in public use and ready for patenting." *Pronova Biopharma Norge AS v. Teva Pharms. USA, Inc.*, 549 F. App'x 934, 938 (Fed. Cir. 2013). In this context, "public use" means that purported use "(1) was accessible to the public; or (2) was commercially exploited." *Id.* "Accessible to the public" means that the "completed invention is used in public, without restriction." *Id.* at 939. "An agreement of confidentiality, or circumstances creating a similar expectation of secrecy, may negate a public use where there is not commercial exploitation." *Id.* Likewise, "a disclosure of some aspects of an invention, but not all, will likely preclude a finding of public use." *Id.* "Commercial exploitation is a clear indication of public use, but it . . . requires more than . . . a secret offer for sale." *Id.* at 938. The Court should also consider "evidence relevant to experimentation, as well as the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed on members of the public who observed the use; and commercial exploitation." *Id.* at 939.

Beard, the product's inventor and deceased principal of Plaintiffs, testified that Plaintiff BNJ Leasing started designing a new style of mobile fuel tank in the summer of 2013. Exhibit A to Response [202-1], at 10. Wichita Tank built them, and BNJ took delivery in December 2013. *Id.*; *see also* Exhibit B to Response [198-2], at 2; Exhibit

F to Response [198-6], at 2-3. Beard said that prior to 2013, loading racks – a platform accessible by a ladder that one stands on to access the vehicle being refueled – were only available for "stationary use, not for mobile use." *Id.* at 12. However, the mobile tanks manufactured by Wichita Tank for BNJ in 2013 had a loading rack on the back. *Id.* at 6. The record contains pictures of one of the tanks designed in 2013, including a stamp on it of the subject patent's number. Exhibit E to Response [198-5], at 4-8; Exhibit D to Response [199-5], at 4-5. It appears to be undisputed that the tank was transported from Texas to Michigan in late 2013. The effective filing date of the subject patent was February 24, 2015. Exhibit 1 to Complaint [1-2], at 1.[4]

Plaintiffs argue that Defendant has no evidence that the mobile tank designed by Wichita Tank in 2013 was used publicly more than a year before the effective filing date of the application. Defendant contends that the mere transportation of the 2013 Wichita Tank constitutes "public use" because it was displayed to many members of the public during the journey from Texas to Michigan. The Court disagrees. The mere display of an invention does not constitute public use. *See Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1385 (Fed. Cir. 2007); *Xerox Corp. v. 3Com Corp.*, 26 F. Supp. 2d 492, 496 (W.D.N.Y. 1998).

Notably, Defendant has not produced any evidence that the 2013 Wichita Tank was publicly used *for its intended purpose* more than one year prior to the effective filing date of the subject patent. For example, Defendant has not produced any evidence as to the nature of the transportation, *i.e.*, whether the mobile tank was

---

[4] *See* 35 U.S.C. § 120.

carried on a flatbed, or whether it was pulled behind a truck as it would when in service. Likewise, Defendant has not produced any evidence that the load rack was publicly used, that the tank was publicly used to transport fuel, or that it was publicly used to dispense fuel. As noted above, "a disclosure of some aspects of an invention, but not all, will likely preclude a finding of public use." *Pronova*, 549 F. App'x at 939.

In summary, Defendant has not presented any evidence whatsoever that the 2013 Wichita Tank design was publicly used for its intended purpose of transporting fuel and refueling equipment. "[I]t is not public knowledge of his invention that precludes the inventor from obtaining a patent for it, but a public use or sale of it." *Xerox Corp.*, 26 F. Supp. 2d at 496. Therefore, the Court grants Plaintiffs' Motion for Summary Judgment of No Inequitable Conduct [181]. The Court grants summary judgment in Plaintiffs' favor as to Defendant's affirmative defense that Mark Beard, Plaintiffs' deceased principal, failed to disclose material information of a prior public use of the 2013 Wichita Tank to the USPTO when he applied for the subject patent.

### VI. MOTION FOR PARTIAL SUMMARY JUDGMENT [183]

Finally, Plaintiffs filed a Motion for Partial Summary Judgment [183], in which they argue that the 2013 design by H & H Welding, discussed above, is not prior art. "A person shall be entitled to a patent unless . . . the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention . . . ." 35 U.S.C. § 102(a)(1). "A prior art reference anticipates a patent's claim when the four corners of that document describe every element of the claimed invention, either

38

expressly or inherently, such that a person having ordinary skill in the art could practice the invention without undue experimentation." *In re Gamble*, 2022 WL 151986 at *2 (punctuation omitted). "A patent claim is anticipated only if each limitation is found within a single prior art reference, arranged or combined in the same way as in the claim." *Id.*

Defendant contends that the 2013 H & H design constitutes prior art under the "on sale" and "otherwise available to the public" prongs of § 102(a)(1). Defendant has the burden of proving these issues by clear and convincing evidence. *Poly-America*, 383 F.3d at 1308.

For the "on sale" prong of § 102(a)(1) to apply, two conditions must be met "more than a year before an inventor files a patent application." *Helsinn*, 139 S. Ct. at 633. "First, the product must be the subject of a commercial offer for sale." *Id.* "This inquiry requires there have been a commercial offer, and the invention that was the subject matter of the offer for sale must satisfy each claim limitation of the patent, though it may do so inherently." *Quest Integrity*, 924 F.3d at 1227. "Inherency is established if the natural result flowing from the operation as taught would result in the performance of the questioned function." *Scaltech*, 269 F.3d at 1329. "[A] sale or offer of sale need not make an invention available to the public . . . ." *Quest Integrity*, 924 F.3d at 1227.

Second, the invention must be ready for patenting, which . . . [can] be shown by proof of reduction to practice or drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the

invention." *Helsinn*, 139 S. Ct. at 633.

As discussed above, the claim includes the following limitation: "a fuel dispenser connected to the port for dispensing fuel stored within the vessel." Exhibit 1 to Complaint [1-2], at 13. The Court construed the term "fuel dispenser" to mean "a refueling boom that can be guided by a user standing on a rear docking station . . . ." *Portabull*, 2021 WL 1110299 at *4. It appears to be undisputed that H & H's June 2013 tank design did not include a fuel dispenser at the rear of the vessel. *See* Exhibit L to Motion for Summary Judgment [190-12], at 32; Exhibit M to Motion for Summary Judgment [184-13], at 12-14; Exhibit J to Motion for Summary Judgment [190-10], at 2-3. Therefore, the Court finds that the on-sale prong of § 102(a)(1) does not apply to the 2013 H & H design.

The "otherwise available to the public" prong is interpreted "broadly." *In re Enhanced Sec. Research, LLC*, 739 F.3d at 1354. It broadens the scope of § 102(a)(1) to anything "the public has a means of accessing . . . ." *Id.* The key determination is "whether interested members of the relevant public could obtain the information if they wanted to." *Id.*

Chris Holifield of H & H Welding testified that H & H did not publicize the 2013 design and, in fact, considered it to be confidential. Exhibit M to Motion for Summary Judgment [184-13], at 43, 48. He also testified that the design was never presented to any other customer, *id.* at 47, or made available to the public. *Id.* at 50. Likewise, Nathan McAndrews, a former employee of H & H, testified that he had no knowledge of the 2013 design ever being made available to the public. Exhibit Q to

Motion for Summary Judgment [184-17], at 28.

The only evidence that Defendant has presented that indicates the 2013 H & H design was "available to the public" is Holifield's testimony that anyone who wanted to could come into their shop off the street, walk through with a foreman, and see what they were working on. Exhibit G to Motion for Summary Judgment [190-7], at 13-14. However, when read with his other testimony, this is simply not enough to create a genuine dispute of material fact as to "whether interested members of the relevant public could obtain the information if they wanted to." *In re Enhanced Sec. Research, LLC*, 739 F.3d at 1354. Holifield specifically testified that he considered the 2013 design to be confidential, and that it was never made available to the public. Exhibit M to Motion for Summary Judgment [184-13], at 43, 47-48, 51-52. Therefore, the Court finds that the "otherwise available to the public" prong of § 102(a)(1) does not apply.

For these reasons, the Court grants Plaintiffs' Motion for Partial Summary Judgment that the Alleged 2013 H & H Offer Is Not Prior Art [183].

## VII. CONCLUSION

For these reasons, the Court **denies** Plaintiffs' Motion to Exclude Evidence and Testimony Regarding Alleged Non-Infringing Alternatives [186], **denies** Defendant's Motion for Summary Judgment and for *Daubert* Relief [189], **grants** Plaintiffs' Motion for Summary Judgment of No Inequitable Conduct [181], and **grants** Plaintiffs' Motion for Partial Summary Judgment that the Alleged 2013 H & H Offer Is Not Prior Art [183].

SO ORDERED AND ADJUDGED this ___14th___ day of March, 2022.

_____/s/   Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE