### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

BNJ LEASING, INC., *et al.*                                    PLAINTIFFS

v.                                    CIVIL ACTION NO. 2:19-CV-156-KS-MTP

PORTABULL FUEL SERVICE, LLC                                    DEFENDANT

### ORDER

For the reasons provided below, the Court **grants in part and denies in part** Plaintiffs' Motion in Limine [208] and **grants in part and denies in part** Defendant's Motion in Limine [210].

### I. BACKGROUND

This is a patent infringement case. Plaintiff BNJ Leasing, Inc. is the current owner of United States Patent No. 10,232,782, titled "Mobile Refueling Vessel." *See* Exhibit 1 to Complaint [1-2], at 1. Plaintiff MRB Enterprise, Inc. applied for the patent and assigned it to BNJ. *Id.* The abstract on the patent describes the device as "[a] mobile vessel for refueling engines at remote refueling sites." *Id.* Essentially, the device is a fuel tank on wheels, designed to be pulled by a truck, with a small platform on the end accessible by a fold-down ladder. *Id.* at 3-6. Fuel is dispensed from either a pump on the side of the tank similar to what one would use to fill up a car at a gas station, or from a swiveling boom extending from the top of the tank, accessible from the platform on the back of the tank. *Id.* Both Plaintiffs own mobile refueling tanks,

and MRB is in the business of leasing, deploying and servicing such mobile refueling tanks throughout the United States. Complaint [1], at 6.

Plaintiffs allege that Defendant, Portabull Fuel Service, LLC, also provides mobile refueling services. *Id.* at 7. Plaintiffs claim that one model of Defendant's refueling tanks, branded as the "Taurus," is covered by the Patent, and, therefore, Defendant has and continues to infringe on the Patent by making, selling and/or using the Taurus without Plaintiffs' permission.

The Court held a *Markman*[1] hearing on November 30, 2020, and on March 23, 2021, it issued a Claim Construction Memorandum Opinion and Order [135]. *BNJ Leasing, Inc. v. Portabull Fuel Serv., LLC*, 2021 WL 1110299 (S.D. Miss. Mar. 23, 2021). The parties later filed various dispositive motions, which the Court addressed in a Memorandum Opinion and Order [214] on March 14, 2022. *BNJ Leasing, Inc. v. Portabull Fuel Serv., LLC*, --- F. Supp. 3d ---, 2022 WL 782561 (S.D. Miss. Mar. 14, 2022). The Court now addresses the parties' Motions in Limine [208] [210].

## II. PLAINTIFFS' MOTION IN LIMINE [208]

### A.    *The 2013 H & H Offer*

Plaintiffs argue that the Court should exclude any evidence or argument related to the 2013 H & H design. Plaintiffs contend that such evidence is irrelevant because the Court has already ruled that the 2013 H & H design is not prior art under 35 U.S.C. § 102(a)(1). In response, Defendant argues that the 2013 H & H design is

---

[1] *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

relevant to their obviousness defense.

The Court granted Plaintiffs' Motion for Partial Summary Judgment [183], finding that there was no genuine dispute of material fact as to whether the 2013 H & H design constituted prior art under the "on sale" and "otherwise available to the public" prongs of § 102(a)(1). *BNJ Leasing*, 2022 WL 782561 at *16-*18. The "on sale" prong did not apply because 2013 H & H design did not include each claim limitation of the subject patent. *Id.* at *17 (citing *Quest Integrity USA, LLC v. Cokebusters USA Inc.*, 924 F.3d 1220, 1227 (Fed. Cir. 2019)). The "otherwise available to the public" prong did not apply because Defendant presented no evidence that the design was actually available to the public. *Id.* at *17. Therefore, 35 U.S.C. § 102(a)(1)'s bar to patentability is not applicable here.

However, Defendant has also asserted an obviousness defense. Section 103 provides:

> A patent for a claimed invention may not be obtained, *notwithstanding that the claimed invention is not identically disclosed as set forth in section 102*, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.

35 U.S.C. § 103 (emphasis added). "To prove obviousness, one must show that a skilled artisan 'would have found it obvious to bridge the differences between the subject matter of the claims and the prior art.'" *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 2017 WL 4570787, at *1 (E.D. Wis. Oct. 12, 2017) (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1343 (Fed. Cir. 2013)). The Court should consider

"(1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others." *Id.* (quoting *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010)).

Accordingly, "subject matter defined in Section 102 may be used to support an obviousness argument although the invention is not identically disclosed or described as set forth in section 102." *Id.* at *2. Phrased differently, "even if a prior art reference fails to establish that the patent is invalid based on an analysis of Section 102 alone, that prior art may still be used to support a contention that the invention is obvious under Section 103." *Id.* (citing *Net MoneyIn, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008)). Therefore, the Court denies this aspect of Plaintiffs' motion. Evidence regarding the 2013 H & H design is relevant to Defendant's obviousness defense.

**B.     *Any Physical Model Related to the 2013 H & H Offer***

Plaintiffs argue that the Court should exclude any evidence or argument concerning a physical model of the 2013 H & H design. Plaintiffs contend that Defendant failed to produce any documentary evidence concerning this model during discovery, and that certain deposition testimony indicates that the model no longer exists.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

4

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In applying Rule 37(c), the Court considers the following factors:

(1)     the importance of the [evidence];

(2)     the prejudice to the opposing party of allowing the [evidence];

(3)     the possibility of curing such prejudice by a continuance; and

(4)     the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 572 (5th Cir. 1996).

Here, the Court has not seen the alleged model or heard the evidence concerning it. Likewise, the Court does not know the context in which this evidence will be offered. Therefore, the Court cannot assess its importance, or the prejudice of allowing it. Accordingly, the Court denies this aspect of Plaintiffs' motion without prejudice to Plaintiffs' right to raise the issue at trial when the Court has sufficient information to render a decision.

## C.    *Inequitable Conduct*

Plaintiffs argue that the Court should exclude all evidence and argument related to inequitable conduct in procuring the subject patent.[2] The Court granted

---

[2] In reply, Plaintiffs improperly expanded the scope of this request to include all references to the non-compete agreement and Defendant's unclean hands defense, erroneously stating that the Court had dismissed the defense. To be clear, the Court did not dismiss Defendant's unclean hands defense. Rather, the Court found that there were genuine issues of material fact and denied Defendant's motion for summary judgment in that respect.

Plaintiffs' motion for summary judgment on Defendant's inequitable conduct defense. However, "all evidence related to inequitable conduct in procuring the subject patent" is a large umbrella, and the Court declines to exclude such a potentially wide swath of evidence without more specificity. As Defendant notes in briefing, Plaintiffs' motion potentially encompasses evidence relevant to Defendant's unclean hands defense, which has not been dismissed. Therefore, the Court denies this aspect of Plaintiffs' motion without prejudice to Plaintiffs' right to raise it at trial with more specificity.

**D.    *Costs Not Previously Produced***

Plaintiffs argue that the Court should exclude all evidence of costs related to sales of the accused products that were not produced in discovery. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In applying Rule 37(c), the Court considers the following factors:

(1)    the importance of the [evidence];

(2)    the prejudice to the opposing party of allowing the [evidence];

(3)    the possibility of curing such prejudice by a continuance; and

(4)    the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club*, 73 F.3d at 572.

Here, Plaintiffs have not identified the specific evidence that was not produced.

Therefore, the Court cannot assess its importance, or the prejudice of allowing it. Accordingly, the Court denies this aspect of Plaintiffs' motion without prejudice to Plaintiffs' right to raise the issue at trial with more specificity.

### E.   *Prior Art Not Included in the Invalidity Contentions*

Plaintiffs argue that the Court should exclude any evidence or argument pertaining to prior art that was not disclosed in Defendant's invalidity contentions. Plaintiffs contend that Defendant's exhibit list for trial includes prior art references that were not listed in the invalidity contentions. In response, Defendant argues that Plaintiffs were provided notice of these examples of prior art in its expert reports, and that they do not set forth any new invalidity theory.

The Court will assume that Defendant failed to timely disclose the disputed prior art references in its invalidity contentions. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In applying Rule 37(c), the Court considers the following factors:

(1)     the importance of the [evidence];

(2)     the prejudice to the opposing party of allowing the [evidence];

(3)     the possibility of curing such prejudice by a continuance; and

(4)     the explanation, if any, for the party's failure to comply with the discovery order.

7

*Sierra Club*, 73 F.3d at 572.

Here, the evidence is important because it is alleged prior art references that are relevant to Defendant's obviousness defense. The Court finds that Plaintiffs were not materially prejudiced by Defendant's failure to include the prior art references in the invalidity contentions because 1) Plaintiffs were still provided notice of the prior art references by their inclusion in Defendant's expert report, 2) Plaintiffs were still able to obtain opinions from their own experts on the disputed references, 3) Plaintiffs were still able to depose Defendant's expert about the disputed references, and 4) Defendant did not advance a new theory of invalidity. Indeed, Plaintiffs have not articulated any material prejudice or proposed a form of cure. Therefore, the Court denies this aspect of Plaintiffs' motion. *See GREE, Inc. v. Supercell Oy*, 2021 WL 603727, at *2 (E.D. Tex. Feb. 16, 2021); *cf. Mobility Workx, LLC v. Cellco P'ship*, 2019 WL 5721814, at *19 (E.D. Tex. Nov. 5, 2019) (prior art not included in invalidity contentions not stricken because it was known by parties from prosecution of parent patent).

## F.  *Expert Testimony Regarding Invalidity*

Plaintiffs argue that the Court should exclude any opinions from Defendant's experts on invalidity theories that have not already been disclosed in the expert report from Fred Smith, Defendant's technical expert. However, Plaintiffs have not identified any specific opinions.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In applying Rule 37(c), the Court considers the following factors:

(1)     the importance of the witnesses' testimony;

(2)     the prejudice to the opposing party of allowing the witnesses to testify;

(3)     the possibility of curing such prejudice by a continuance; and

(4)     the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club*, 73 F.3d at 572.

Here, Plaintiffs have not identified any specific expert opinions that were not disclosed. Therefore, the Court cannot assess their importance, or the prejudice of allowing them. Accordingly, the Court denies this aspect of Plaintiffs' motion without prejudice to Plaintiffs' right to raise the issue at trial with more specificity.

## G.     *Eric Krause's Testimony Regarding Lost Profits*

Plaintiffs argue that the Court should exclude the testimony of Defendant's expert, Eric Krause, for the same reasons asserted in their Motion to Exclude Evidence of Non-Infringing Alternatives [186]. The Court denied that motion. *BNJ Leasing*, 2022 WL 782561 at *6. It likewise denies this motion for the same reasons previously provided.

## H.     *The Non-Compete Agreement*

Plaintiffs argue that the Court should exclude any evidence or argument related to the non-compete agreement referenced in Defendant's unclean hands

9

defense. Plaintiffs contend that this evidence is not relevant to any issue for trial, and that its probative value has is outweighed by its prejudicial nature.

The Court denies this aspect of Plaintiffs' motion. The evidence of the non-compete agreements entered into by Plaintiffs' former principal and the inventor of the subject patent is relevant to Defendant's unclean hands defense. *See id.* at *12. To the extent such evidence is prejudicial, it is not unfairly so.

## I.    *Circumstances of Mark W. Beard's Death*

Finally, Plaintiffs argue that the Court should exclude any evidence of the circumstances surrounding Mark W. Beard's death, on the grounds that they are irrelevant to this litigation. In response, Defendant argues that any reference to Mr. Beard's death should be excluded, but that if his death is mentioned, Defendant should be permitted to explore the circumstances of his death to rebut any prejudice that may arise from the jury's knowledge that he died.

The circumstances surrounding Beard's death are irrelevant to the issues for trial. Therefore, the Court grants this aspect of Plaintiffs' motion. However, as noted below, neither Plaintiffs' counsel nor their witnesses may improperly use this issue to elicit sympathy from the jury. The Court's jury instructions will include an instruction that jurors must not be swayed by sympathy, but must decide the case according to the evidence and law. If, at any point during trial, Defendant believes that Plaintiffs opened the door to additional evidence regarding Beard's death, it can raise the issue outside the presence of the jury.

### III. DEFENDANT'S OMNIBUS MOTION IN LIMINE [210]

*A.*   ***Death of Mark W. Beard***

First, Defendant argues that the Court should exclude any evidence or argument regarding the fact that the subject patent's inventor, Mark W. Beard, is deceased. Defendant argues that such information is irrelevant to the parties' claims, defenses, and/or damages. Defendant also argues that the probative value of such evidence is outweighed by the likelihood that it would unfairly prejudice the jury or confuse the issues. Finally, Defendant argues that if Plaintiffs are permitted to refer to Beard's death, then Defendant should be permitted to refer to the nature of his death.

In response, Plaintiffs propose that the parties agree to a stipulation that Mark W. Beard is deceased, without any further information or elaboration. Defendant objects to this proposal, fearing that Plaintiffs will then use the stipulation to improperly elicit sympathy from the jury. Defendant also argues that the jury will naturally sympathize with Plaintiffs if Beard's death is revealed to them.

Beard's actions and deposition testimony are relevant to Defendant's defense of unclean hands, and his absence from trial will be conspicuous. The Court does not believe that a mere reference to Beard's death will cause improper juror sympathy. However, Defendant's concern that Plaintiffs will use Beard's death to elicit improper sympathy from the jury is a reasonable one.

Therefore, the Court will presently deny this aspect of Defendant's motion, with an instruction to Plaintiffs that neither their counsel nor their witnesses are

11

permitted to play this issue for sympathy. Additionally, the Court's standard jury instructions include an instruction that jurors must not be swayed by sympathy, but must decide the case according to the evidence and law. If, at any point during trial, Defendant believes that Plaintiffs opened the door to additional evidence regarding Beard's death, it can raise the issue outside the presence of the jury.[3]

## B.   *Defendant's Failure to Seek Advice of Counsel or Search Patents*

Defendant argues that the Court should exclude any evidence or argument concerning its failure to search existing patents and/or seek advice of counsel regarding the accused products and infringement of the subject patent. Defendant contends that such evidence has no relevance to any issue for trial. In response, Plaintiffs agree that Defendant's failure to seek advice of counsel should be excluded, but Plaintiffs argue that Defendant's failure to search for existing patents that the accused products might infringe is relevant to the question of willful infringement. In reply, Defendant argues that Plaintiffs have not pleaded a claim of willful infringement.

First, the Court grants as unopposed Defendant's motion as to evidence and argument regarding its failure to seek advice of counsel.

As for Defendant's failure to search existing patents, Plaintiffs neither asserted a claim of willful infringement in the Complaint [1], nor alleged that Defendant willfully infringed the subject patent. Therefore, they are barred from

---

[3] The Court believes that Plaintiffs' suggested stipulation that Beard died, without any additional facts or elaboration, is reasonable. But if the parties can't agree, then there is no stipulation.

seeking enhanced damages based on willful infringement. *See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1373 (Fed. Cir. 2009). Accordingly, the Court also grants Defendant's motion as to evidence and argument regarding its failure to search existing patents before using the accused devices.

## C.   *Discovery Disputes*

Defendant argues that the Court should exclude all evidence and argument regarding any discovery disputes between the parties, including but not limited to alleged deficiencies in the parties' discovery responses and motions to compel. Defendant contends that this evidence is irrelevant to any issues that will be decided at trial. In response, Plaintiffs argue that they should be able to present evidence of Defendant's "discovery failings" to rebut any attack on their damages theory.

The parties' discovery disputes are wholly irrelevant to the issues that will be put before the jury. *See, e.g. Affordable Care, LLC v. JNM Office Prop.*, LLC, 2022 WL 291716, at *3 (S.D. Miss. Jan. 31, 2022); *United States v. Auzenne*, 2020 WL 6438665, at *2 (S.D. Miss. Nov. 2, 2020). Therefore, the Court will tentatively grant this aspect of Defendant's motion, with the caveat that Plaintiffs may raise this issue again, outside the presence of the jury, if they believe that Defendant opens the door to such evidence in response to Plaintiffs' damages case.

## D.   *Failure to Design or Implement Non-Infringing Alternatives*

Defendant argues that the Court should bar Plaintiffs from arguing or presenting any evidence regarding Defendant's alleged failure to design around or actually implement any non-infringing alternatives. Defendant contends that any

such new design would constitute a subsequent remedial measure, and, therefore, Rule 407 bars the admission of any such evidence. In response, Plaintiffs argue that the absence of available alternative designs is relevant to the lost profits analysis.

> Rule 407 provides:
>
> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in product or its design; or a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

The Court denies this aspect of Defendant's motion. First, Rule 407 bars evidence of subsequent remedial measures – not a party's failure to take subsequent remedial measures. Second, Rule 407 explicitly provides that the Court may admit evidence of subsequent remedial measures for a purpose other than proving negligence or culpable conduct. The absence of available alternative designs is relevant to the *Panduit* lost profits analysis, *TEK Global, SRL v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 789-90 (Fed. Cir. 2019), and Defendant's failure to implement any alternative designs is relevant to whether there were any available alternative designs. Defendant may propose a limiting instruction as to the proper purpose of the evidence.

### E. *The Jones Company*

Defendant argues that the Court should exclude any evidence or argument

concerning its corporate structure and parent company, the Jones Company. Defendant contends that such evidence and argument is irrelevant to the issues to be tried, and that the danger of unfair prejudice outweighs any probative value. Specifically, Defendant believes that Plaintiffs will suggest that Defendant's parent company will pay any judgment in this case.

In response, Plaintiffs argue that Defendant's corporate structure is relevant to the lost profits analysis because Defendant's parent corporation, the Jones Company, provided marketing support for the accused products. Plaintiffs contend that Defendant's marketing efforts are relevant to assessing demand for the accused products and the amount of infringing sales.

The *Panduit* analysis, which Plaintiffs have elected to utilize, is "one useful, but non-exclusive method to establish the patentee's entitlement to lost profits." *TEK Global, SRL v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 789 (Fed. Cir. 2019); *see also Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). Under this analysis, "a patentee is entitled to lost profits if it can establish four things: (1) demand for the patented product, (2) absence of acceptable, non-infringing alternatives to the patented product, (3) manufacturing and marketing capability to exploit the demand for the patented product, and (4) that the patentee would have made a profit if it had made the infringer's sales." *TEK Global*, 920 F.3d at 789-90. The third factor requires the patentee to demonstrate that, although it may not have been selling or marketing a product during the infringement period, it had the capability to do so. *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir.

2007).

Therefore, the Court concludes that evidence regarding Defendant's corporate structure is not relevant to the *Panduit* analysis. The Court grants this aspect of Defendant's motion, with the caveat that Plaintiffs may raise this issue again, outside the presence of the jury, if they believe that Defendant opens the door to such evidence. *See also Parthenon Unified Memory Architecture LLC v. Apple, Inc.*, 2016 WL 7743510, at *1 (E.D. Tex. Sept. 21, 2016) (motion in limine granted as to pejorative terms referring to party's corporate structure or capitalization).

### F.    The Parties' Counsel

Defendant argues that the Court should exclude all evidence or argument concerning the parties' attorneys, such as comments regarding the relative size of their law firms, their clients, their locations, and revenue. In response, Plaintiffs argue that they should be permitted to question the *venire* regarding connections or relationships with Defendant's attorneys.

The Court grants this aspect of Defendant's motion, but the parties will be permitted to conduct *voir dire* regarding knowledge of, connections to, or relationships with the parties' attorneys. *See Riley v. Ford Motor Co.*, 2011 WL 3273592, at *2 (S.D. Miss. July 29, 2011) (court granted motion in limine as to evidence and argument about parties' counsel, but permitted the parties to "provide the jurors with cursory background information for the counsel at trial and engage in limited questioning during voir dire to ensure that none of the jurors have a conflict.").

16

### G.      *The Presumption of Validity*

Defendant argues that the Court should bar Plaintiffs from referring to the presumption of validity of the subject patent. Defendant contends that any argument regarding the patent's presumption of validity would confuse the jury and be prejudicial. In response, Plaintiffs argue that the statutory presumption of validity is relevant, and that the jury should be instructed on the presumption. Plaintiffs contend that Defendant wants to prevent the jury from gaining an accurate understanding of the applicable law.

Numerous courts have reached different conclusions on this issue. The statutory presumption of a patent's validity "is one of law, not fact, and does not constitute 'evidence' to be weighed against the challenger's evidence." *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004). "[T]he presumption of validity and heightened burden of proving invalidity are static and in reality different expressions of the same thing – a single hurdle to be cleared." *Id.* at 1258. Therefore, a district court does not err if it declines to give an instruction on the presumption of validity, as long as it instructs the jury that a party challenging the validity of a patent must prove invalidity by clear and convincing evidence. *Id.* at 1259.

This Court agrees with the reasoning in *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 2017 WL 959592, at *6 (E.D. Tex. Mar. 13, 2017):

> [T]he use of the phrase "presumption of validity" would add little to the jury's understanding of the burden of proof on the validity issues. Moreover, the phrase might be confusing to the jury, to the extent that the jury is required to consider both that phrase and the Court's instructions on the burden of proof. At minimum, the use of the term

17

> "presumption" would require a further definitional instruction by the Court, without leading to any greater insight on the jury's part as to the nature of the burden of proof on the validity issues.

*Id.* In other words, the important thing for the jury to understand is the applicable burden of proof, and introducing other concepts – such as legal presumptions – just muddies the water, obscuring the issue they will be asked to decide. The Court grants this aspect of Defendant's motion.

## H.    *The Clear and Convincing Evidence Standard*

Defendant argues that the Court should preclude the parties from using analogies to other areas of the law to describe the clear and convincing evidence standard. Plaintiffs do not disagree. Therefore, the Court grants this aspect of Defendant's motion as unopposed.

## I.    *Costs of Litigation*

Defendant argues that the Court should exclude any evidence or argument regarding the costs of litigation or a party's ability to obtain financing for such costs, on the grounds that it is irrelevant to the claims and defenses in this case and that the probative value of such evidence or argument would be greatly outweighed by the danger of unfair prejudice. In response, Plaintiffs argue that they should be permitted to offer evidence and argument to counter any argument by Defendant that it cannot afford to pay a judgment.

The Court grants this aspect of Defendant's motion. The parties' cost of litigation and/or ability to obtain financing for such costs is irrelevant to any issue to be tried to the jury. *Marlow*, 2013 WL 1752384 at *3. However, Plaintiffs may raise

this issue again at trial, outside the presence of the jury, if they believe that Defendant opens the door to such evidence.

## J.    *Other Patents*

Defendant argues that the Court should exclude all evidence or argument concerning any other patents the Plaintiffs own besides those asserted in this case. Defendant contends that such evidence and argument are irrelevant to the matters to be tried to the jury, and that their probative value is substantially outweighed by their potential prejudicial effect. In response, Plaintiffs argue that evidence related to other patents or applications in the same family as the subject patent is relevant to question of validity.

As Defendant acknowledged in briefing, evidence related to other related patents is relevant to the issue of inequitable conduct in the patent application process. *See, e.g. Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1292 (Fed. Cir. 2012). However, the Court granted summary judgment as to Defendant's inequitable conduct defense. Also, the prosecution of other patents in a patent family is relevant to claim construction. *See, e.g. Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1305-06 (Fed. Cir. 2001). But this case has progressed beyond claim construction, and we are now addressing the question of infringement.

Plaintiffs argue that the USPTO's consideration of the validity of the continuation patent (No. 11,267,403) is relevant to assess the validity of the subject patent because they are part of a continuous application process. However, Plaintiffs

have cited no case law providing that the validity of a continuation patent is relevant to a jury's decision on the validity of an earlier patent, as the issue is presented here. In the Court's opinion, such evidence will only confuse the issues before the jury. *See Affinity Labs of Tex., LLC v. Ford Motor Co.*, 2014 WL 11510084, at *2 (E.D. Tex. Sept. 8, 2014); *Cybergym Research LLC v. Icon Health & Fitness, Inc.*, 2007 WL 9684226, at *1 (E.D. Tex. Oct. 7, 2007); *cf. PalTalk Holdings, Inc. v. Microsoft Corp.*, 2009 WL 10677783, at *3 (E.D. Tex. Feb. 25, 2009). In the absence of case law providing that such evidence is relevant to the issues to be tried here, the Court grants this aspect of Defendant's motion.

SO ORDERED AND ADJUDGED this __25th__ day of March, 2022.

/s/   Keith Starrett
_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE